Let's take up the 1130 case. People v. Lewis v. Davis. All right. Please proceed. Good morning, Your Honor. May it please the Court. My name is Brian McNeil. I'm with the Office of the State Appellate Defender, and I represent Louis Davis. And we are going to discuss two issues in the briefs, Your Honors. And though I'm prepared to answer questions on either issue, I expect to focus on Issue 1. Louis Davis was denied a fair trial, and the State intentionally and repeatedly solicited improper and prejudicial other crimes evidence. On direct examination of the deputy who pulled Mr. Davis over, the prosecutor elicited that Mr. Davis was wanted for being out of compliance with his registration requirements as a sex offender. But the prosecutor also solicited that Mr. Davis was wanted for a second warrant, an active warrant out of Jackson County. And then on redirect, the prosecutor returned to the subject and made painstakingly clear for the jury that Mr. Davis was wanted for a warrant associated with the charges offense and also for a second unnamed offense. And this was error because there was no reason for the jury to have heard anything about any second offense. It was more than enough to explain why Mr. Davis was arrested to elicit that there was a warrant for this particular offense. This is not prejudicial, and it explains why the arrest happened. It was also plain error in this case, under both prongs of plain error, because it was improper and prejudicial. It was first prong of plain error because the evidence was closely balanced against Mr. Davis. And that's because he told a clear and credible story about how he had registered in the past with no problem on numerous occasions. But on this case, he went to the East St. Louis Police Department and was thwarted despite his best efforts to register. And we know that the jury was seriously considering this because the jury specifically asked, during deliberations, how long had Mr. Davis been compliant before and how long had he been out of prison? Now that shows the jury zeroing in on the credibility of what Mr. Davis said and wondering if it really made sense that, as the state alleged, he would register repeatedly with no problem and then suddenly decide, in this case, not to register anymore. Against this backdrop, evidence of another crime would have been very large. We know from people at Lindgren and numerous other cases that evidence like this is so prejudicial that it ordinarily calls for reversal when it's improperly admitted. And here, it would have told the jury that Mr. Davis was not a 60-year-old man who had failed to fill out a form relating to a decades-old conviction that he had already served his time on. It told them that he was out there committing other crimes unrelated to the charged offense when he was arrested. Now, a jury that's taking a hard look at his credibility in this case is likely to throw up its hands and say, I'm not really sure whether he committed this particular offense, but I don't necessarily care because he's committing other crimes, he's a bad person, might as well just find him guilty to punish him for being a bad person and make sure he doesn't keep committing other crimes. Counsel, when Deputy Dobler was testifying, did Mr. Davis' attorney inquire about this Jackson County warrant on cross? On cross-examination, defense counsel did go into it, the way I read it, certainly, as an attempt to undo the damage that the prosecution had done on direct. Defense counsel got the deputy to say that the warrant in this case was associated with the registration. And I've not reviewed the record, but there was a series of questions by defense counsel on cross-examination regarding this warrant? Defense counsel did question this after direct. Davis did get the deputy to say that the warrant here was associated with the registration, thus suggesting to the jury that maybe this was the only crime involved. So then on redirect, the prosecutor went back to this topic again? That's correct. On redirect, the prosecutor made painstakingly clear for the jury there was a warrant for the charge defense, but there was some other warrant out there out of Jackson County for some other unnamed offense. With respect to the closeness of the case, didn't he have about three different reasons why he didn't register? I mean, at first he said he had and that they must have lost it or something. Then he said something about that the officer signed over his other signatures. I mean, it seemed to me that there were about three different explanations he gave as to why he didn't register. But the reality is that he had not registered, correct? That's correct. He initially said that he had registered, and then when the investigator questioned him further, he said, well, maybe I didn't actually register in this case, but I certainly did everything I could to do so. And furthermore, there should be videotape that will back me up that will show that I was there. But he did admit to the investigator and he admitted on the stand that he did not actually succeed in registering. So how does it make it closely balanced if he did not register? Well, I think the evidence was it was certainly conflicting on his good faith efforts to register. And under 720 ILCS 541, the Voluntary Act is a necessary element of every single criminal offense in Illinois. And that includes the failure to perform a legally required duty. And in addition to that, we know that the jury was taking a hard look at this case because they asked the question during deliberations. There's no reason for the jury to do that if it's just an open and shut case like the state suggests here. So the jury looking at that and looking at his credibility is likely going to, when they go back after the court answers the question, say, you know what, I'm not really sure what's going on here. I don't know if I necessarily believe what he said, but I don't care because he's committing other crimes. He's a bad person. Let's just be safe here, and let's find him guilty for this particular offense. Even if he isn't necessarily guilty of this, maybe he's guilty of whatever that other one is for. In addition, this qualifies as second conflict in error, too, because the evidence in the question denied Mr. Davis a fair trial. Now, it's notable, again, this was intentionally and repeatedly elicited. It gives the error a quality of purposefulness that takes it out of the realm of your average garden variety evidentiary error and puts it more in the realm of a case like Peeble v. Blue, Peeble v. Johnson, cases where the Illinois Supreme Court has found that there's a calculated assault on the defendant's right to a fair trial. And that's why this case is an appropriate case for finding second prompt claim error as well as first prompt claim error. And accordingly, if there are no further questions. I don't think so, Counsel. Thank you. Thank you very much, Your Honor. Argument for the State. Good morning, Your Honors. May it please the Court and Counsel. I've literally come out of this case yesterday, but Shannon and I were not able to present the argument today. So I've not had the benefit of being able to read the record. So probably the best and safest way to go about this, because I haven't looked at that particular interchange at having a trial to bring out this evidence, defense counsel's examination and the State's, we're going to assume the statement argument that it was erroneously brought out. I say that without conceding it, I'll just put it that way so we can go to the plaintiff's analysis. I want to go a little backwards with claim error. I want to start with the second prompt. There's a lot of laws kind of going around about exactly what does the second prompt claim error test consist of. There is, as Counsel correctly notes in the reply brief, a pending case from the Illinois Supreme Court called Clark, where going to be an explicit, I assume, examination of the concept of structural error and the way that that interplays with the second prompt, the plain error test. That Clark case, cases, if you will, now in the Supreme Court, relate back to a Thompson case, where the court, in discussion of the second prompt claim error, noted that the United States Supreme Court had limited the plain error in that type of proceedings to a very limited class of types of error. We call it the class of six, if you will. Complete denial of counsel, trial to afford by its judge, erasure of discrimination in jury selection, denial of self-representation, denial of public trial, and defective reasonable deconstruction. Clark didn't precisely say, I'm excusing, Thompson didn't precisely say that this is a limitation, and that's where Clark said we're not going to limit the structural error to the group of six. Hence, the Supreme Court's taking the case. But I do think it's important to know, when we get to this case, is that the United States Supreme Court's mentioned the group of six in Thompson as it relates to the United States Supreme Court's identification of these things as pertinent, because Illinois' plain error rule, if you go back and look at people from there, and this whole thing kind of started where we are right now, exhaustively tracked Illinois' plain error test with the federal counterpart. So when we discuss the federal counterpart as sort of influencing or sort of managing the diagram of Illinois' plain error rule, then obviously the federal court, the United States Supreme Court, is as high as it can get. Its discussion of the second problem of plain error and structural error is highly pertinent. That said, what I want to point out here specifically is that, even if it's expansive beyond the group of six, the group of six makes pretty clear that when we get to the second problem, it's got to be something more than essentially trial error. It's got to be something that so corrodes the integrity of the trial process itself that it cannot be being said in any way that the defender received a fair trial. What do we have in this case? Well, we have in this case something in the singular here that the state brought out. The officer pulled the defendant over for two reasons. He had a warrant out of Jackson County. He had a warrant for failing to register as a sex offender. Okay? It didn't appear that that was going to end there, except for the fact that defense counsel then brought it out in cross-examination, which then prompted, apparently, the prosecutor, for some reason, to bring it out again. Okay. So it came out twice. And the second time it came out, apparently, as a result of defense counsel's cross-examination. So I think the argument here that it was repeatedly elicited is not exactly really what I would characterize it as. It was brought out in this limited context, both as the basis for the stop and it appeared to be the purpose of bringing it out, not to bring it out to show the defendant's a bad guy. I understand that when you do a course of investigation type thing, that you're limited to only bringing out that information that's relevant to the case before the court. So one can make the argument that the state needed to have brought out the fact that he had a warrant for Jackson County and for failing to register as a sex offender. But we're still talking about a very limited aspect of this case, which is not hard to find later, not brought out, again, later in the trial, not brought out in closing arguments, et cetera. So I think that when we talk about the second problem, plain error, I mean, look at structural error. And clearly, the law no longer gives it. It has to be structural error. What that is and precisely, we're still sort of figuring it out. But we do know that based on Thompson, it's going to be something a lot more than basically an unpreserved trial error, maybe, unless it's a particularly serious unpreserved trial error, like cross-examining a defendant or mentioning the jury when a defendant testifies. But, you know, those are extreme examples, and I think that's sort of what they're kind of getting towards. With regards to the first problem, plain error, and the closely balanced evidence, in this case, there's really only two elements to failing to register as a sex offender. One, you're a sex offender. And two, you normally fail to register. Apparently, from what I have in the briefs, it appears that the defendant stipulated that or understood it as a stipulation he was a sex offender, so the only question is whether he normally failed to register. Well, he obviously didn't fail to register, and he obviously normally didn't fail to register because he admitted as much, both up to trial and before the police officers, when he was arrested. Now, I'm a little sort of perplexed exactly what the defense here is. Is it a defense of impossibility or the good faith defense, I guess? I don't know what it is. But I think Justice Chatelain's query earlier is apt. It's like, well, how can it be closely balanced when pretty much everyone in every faculty's case converges on the fact that a defendant was a sex offender who didn't register, and he knew he didn't register. For a month. I mean, we're not talking about something just a few days or he was a bully. What we have here is a situation where even if we accept at face value the defendant's representations of what he intended to do, a lot of time in mind, apparently, if he was able to register on a weekly or bi-weekly basis for an extended period of time, then disappears for a month. I mean, this is where I disagree with the defense counsel. When the jury brought up that jury question, I don't think that they're asking, hmm, this is not such a bad guy, are we really leaning towards acquittal? I think they're leaning towards conviction. They're looking at, well, if he's able to register four times in a period of a month, and it goes a month without registering, his defense has got to be clodwashed. He just didn't bother to write. He just didn't bother to register. So I don't know. We don't know. We'll never know what the jury was thinking, and I think it's probably wrong to dwell too much upon it or give more great credence to it than it is at its face value. I'm just saying that there are two sides of every coin here, and I think the flip side of the defendant's argument makes more sense. The state put out evidence with regards to the procedures, and the procedures set forth pretty explicitly for the defendant to register, and it's not, obviously, something particularly difficult since he had been able to do so a number of times. As Justice Chambliss pointed out, he was arrested and gave multiple excuses or reasons, none of which were really particularly consistent with each other. At first he said he complied, then he signed the same form, but then he didn't realize, right, he didn't have multiple signatures. Then he was told to leave because the police said they were too busy, and then he claimed he had registered with someone named Investigator Krieger. And then he envisioned, after all that, that he could have been more compliant. So, you know, even if we give the worst possible interpretation to the error in this case, and I use error only as a presumption, not as an admission, that the state has brought out this evidence that he's pulled over because there's a warrant, though that was going to be pretty much overwhelmed by the fact that everything in this case pointed to the defendant's guilt and that, well, gee, I tried, but I just couldn't do it, wasn't going to fly, because it just doesn't really make sense in the context of all the facts in the case, both the multiple excuses that he gave and the fact that he had been able to do so, then apparently decided he didn't want to do it anymore. So I think that when we get to a plain error, the defendant who has the burden of establishing a plain error did not succeed and cannot succeed in improving either the problem or the plain error test. I do want to talk about the constitutional challenge, and then the counsel can bring it up. I do want to make one point, though, as I read the reply brief, because I think this is our best chance to do so. What the defendant has done here is analogize the statute in this case, or the sentence in this case, or the proceeding in this case, to Miller, Miller being the case involving a natural life sentence for juveniles. First of all, I guess I'm a little, the defendant received a six-year sentence, which is not even a maximum sentence for a Class II offense, so I'm a little hard-pressed to even get past that point to say, well, this must shock the conscience. But if the argument is as the classification of offense, then I think that there is a particular distinction here, because Miller dealt with the convergence of one set of facts, three statutory principles that all came together, which resulted in this natural life sentence. This is a recidivist statute. It's not the same circumstance. He violated it, and he violated it again. And those are intervening circumstances which occur by the defendant's own volition, which acted to enhance this. Well, the legislature, however, saw fit to raise it from a three to a two after an initial offense. So if it's from a two to an X based upon multiple two Class II convictions, I don't think it shocks the conscience of anyone, because that's precisely what the legislature had in mind when it created this type of statutory scheme. And clearly, the legislature has deemed a violation of this sentence to be sufficiently serious that it already jumps up to a Class II on the first field of registry. And moreover, unlike in Miller, this is a case where the defendant has had the opportunity repeatedly to establish his rehabilitative potential. The fact that he repeatedly violates the statute, I think, pretty much establishes that he doesn't have rehabilitative potential, because he keeps doing it. So I think that the constitutional challenge sort of collapses under the weight of the logic and should be rejected by this court. But are you aware that we also allowed the state to file the Thompson case that does not allow an as-applied constitutional challenge for the first time on appeal? I was not aware of that. Okay. I wasn't in New York. That's okay, because he may have abandoned that. He probably has abandoned that. I like constitutional arguments, so don't deprive me of that. Well, don't read it on your spare time. There you go. And, Mr. Daley, I don't believe you for our video or our audio record that you- I'm sorry. I'm Patrick Daley with the Office of the State's Attorney's Appellate Prosecutor's Office. Thank you. I'm here on behalf of the state. Thank you. Mr. McNeil, rebuttal. Just briefly, Your Honor. With regard to the first argument, I just want to stress I think it's really important that the jury ask this question. If the state is right and this is such a slam-dunk case and there's no issue here, I don't understand why the jury is wondering why, wondering how often Mr. Davis had registered in the past. I read that to say that they're having trouble with the case or else they would just sound guilty. They're having trouble with the case and they're wondering if it really makes sense that someone who's able to register and register and register in the past, as Mr. Davis was, would suddenly decide that he's just not going to register anymore. I think they're taking a hard look at his story and explaining that, well, yes, I did register previously, but I was unable to do so for these specific reasons that he outlined in his testimony. I think it shows that they're looking very closely at the evidence and that there is a first prompt blame error in this case. Additionally, with regard to the second issue, I'm sorry, Your Honor, you said something about this Thompson case? I have not seen this. Was there a motion to say that this was totally? I'm hopefully not the only one that got this, but I think that the state and Mr. Daly did say that he just, I guess, was assigned last night. The state asked us to take notice of a recent case that was decided, I guess, after the appeal began, and that was People v. Thompson, wherein the Supreme Court determined that it's premature to raise an as-applied constitutional challenge for the first time on appeal. Well, I think that this is just further in line with the other cases that the state already cited in its brief, indicating that where there's no evidentiary record and you don't have enough on the record to decide whether there's anything wrong with the sentence in question, then, yes, it is true. It makes no sense to allow an as-applied challenge at this stage because you don't have enough facts to make that determination. But here, we essentially had an evidentiary hearing at the trial. In the trial, we know the circumstances of this particular offense. We know a little bit about Mr. Davis' background through the PSI and other documents. We know his criminal record. We have more than enough to enable a determination at this point whether this statute is unconstitutional as applied in this particular case. And so, even though the state asked for an evidentiary hearing and says that you can't adjudicate this claim without one, it hasn't identified a single fact that it would hope to adduce at an evidentiary hearing that is necessary to adjudicate this claim now. So I don't read any of those cases, including the recent Illinois Supreme Court cases on this subject, as foreclosing an as-applied challenge in this particular case. And we did say in the alternative, if Your Honors believe that an evidentiary hearing is absolutely necessary, we would request that you remand for one so that we can adjudicate the claim. However, it's definitely our position that it's not necessary. And as for the convergence of statutes in this case, counsel says this case is nothing like Miller because we're dealing with a recidivist statute. But I think it's important to note that the convergence of statutes is significant because what you're talking about is taking something out of the realm of what the legislature could reasonably have intended. In Miller, the legislature couldn't reasonably have intended that these three statutes would interact, they would to produce such a harsh result and such a life sentence, a mandatory life sentence, for someone who was a juvenile who participated only minimally in a murder. Here, it's true. It's a recidivist statute, so it may not be quite as completely beyond the realm of comprehension as it was in Miller, but it's a similar circumstance because you have an offense that is initially a Class III, then it becomes a Class II if someone fails to register, and then only now, eventually it becomes a Class X if it's much further down the road. And suddenly you're looking at six years minimum imprisonment, not to mention three years MSR to be served in prison, which is currently happening, all for the failure to register as a sex offender. This may not be quite as completely beyond the pale as it is in Leon Miller, but you're still talking about something where the punishment imposed shocks the conscience when compared to the actual conduct in question. And I think it's notable that below, even the prosecutor only asked for the minimum sentence in this case instead of asking for something in a much larger range of available sentences. That reflects an understanding that this really is out of proportion to the conduct. Is there no further questions? I'm sorry, Your Honor. Thank you, Counsel. We enter this court with that as the first Mr. Davis' conviction of any alternative command for a Class II sentence. Thank you very much. We'll take this case under advisement. Court may recess. All rise.